[Cite as *State v. Anderson*, 2026-Ohio-686.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

 Plaintiff - Appellee

-vs-

JOSHUA ANDERSON

Defendant – Appellant

Case No. 2025 CA 00021

<u>Opinion And Judgment Entry</u>

Appeal from the Court of Common Pleas,
Case No. 2024-CR-00397

Judgment:   Affirmed

Date of Judgment Entry: February 26, 2026

**BEFORE:** Andrew J. King; William B. Hoffman; Kevin W. Popham, Appellate Judges

**APPEARANCES:** KENNETH W. OSWALT, for Plaintiff-Appellee; W. JOSEPH
EDWARDS, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant Joshua Anderson appeals the March 21, 2025
judgment of conviction and sentence of the Licking County Court of Common Pleas.
Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

{¶ 2}   In early 2024, at the behest of his estranged wife, Anderson solicited the
services of his friend John Carter to commit an arson at the home of C.L in Licking County
Ohio. Carter owed Anderson money for drug transactions and told Carter he would forgive
the debt if he set fire to C.L's Ford truck. When Carter resisted the idea, Anderson struck
him and promised further bodily harm if he failed to carry out the task.

{¶ 3}   In the early morning hours of March 13, 2024, Carter arrived at Anderson's
Morgan County home at Anderson's direction to pick up Anderson's truck and carry out

the arson. Anderson came outside and told Carter the keys were in the truck. Carter entered the truck and found a prepared incendiary device on the passenger-side floorboard. Anderson texted Carter the address and a description of the truck.

{¶ 4}   Carter drove to C.L's Licking County address, lit the incendiary device, and threw it into the bed of the truck. The resulting fire caused more than $30,000 in damage. Anderson texted with Carter before and after the arson both encouraging Carter and threatening him.

{¶ 5}   The investigation that followed identified both men as suspects. On June 27, 2024, the Licking County Grand Jury returned an indictment charging Anderson with three counts of arson and one count of breaking and entering. Anderson pled not guilty to the charges and elected to proceed to a jury trial which took place on March 11 and 12, 2025.

{¶ 6}   The State presented evidence from nine witnesses including the victim, C.L, investigators on the case and Carter, who testified against Anderson pursuant to an agreement with the State. Anderson testified on his own behalf. After hearing the evidence and deliberating, the jury convicted Anderson as charged. He was later sentenced to an aggregate total of six to nine years in prison.

{¶ 7}   Anderson timely filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 8}   "THE COURT ERRED IN DECIDING THAT THE EVIDENCE WAS SUFFICIENT ENOUGH TO DETERMINE THAT BEYOND A REASONABLE DOUBT THE APPELLANT WAS INVOLVED IN THE ARSON AT ISSUE IN THIS CASE."

{¶ 9}   In his sole assignment of error, Anderson argues the State's evidence was insufficient to sustain his convictions for aggravated arson, arson, and breaking and entering. We disagree.

## Initial Matters

{¶ 10} As noted by the State, while Anderson's assignment of error is captioned as a sufficiency challenge, the argument that follows rings in manifest weight as he does not argue that the State failed to prove any one element of any of the charged offenses. Rather, he challenges the believability of the evidence presented. We note that a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." *Id*. at 390.

{¶ 11} The State urges this Court to overrule Anderson's assignment of error based solely on his improper sufficiency challenge. While we could certainly do so, in the interest of justice, we address both sufficiency and manifest weight.

## Standard of Review

{¶ 12} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On

review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

## The Charges

{¶ 13} Count one of the indictment charged Anderson with aggravated arson pursuant to R.C. 2909.02(A)(3). The charge required the State to prove Anderson, by means of fire or explosion, and through acceptance of an agreement for hire, knowingly created a substantial risk of physical harm to any occupied structure.

{¶ 14} Count two of the indictment charged Anderson with aggravated arson pursuant to R.C. 2909.02(A)(2). The charge required the State to prove Anderson, by means of fire or explosion, knowingly created a substantial risk of physical harm to any occupied structure.

{¶ 15} Count three of the indictment charged Anderson with arson pursuant to R.C. 2909.02(A)(1). The charge required the State to prove Anderson, by means of fire or explosion, knowingly created a substantial risk of physical harm to any property of another without the other person's consent, and the value of the property, or the amount of physical harm involved was $1000 or more.

{¶ 16} The final count of the indictment charged Anderson with breaking and entering pursuant to R.C. 2011.13(B). The charge required the State to prove Anderson trespassed on the land or premises of another with purpose to commit a felony.

{¶ 17} At trial, the State proceeded on a complicity by aiding and abetting theory. "[To] support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 2001- Ohio-1336, syllabus.

The Evidence

{¶ 18} Carter testified he committed the above outlined crimes at Anderson's direction in order to work off a drug debt. Transcript of trial (T.) 157-158, 164.Carter stated Anderson provided him with use of his truck, C.C.'s address, a description of C.C.'s truck, and an incendiary device to complete the job. Carter said the incendiary device was on the passenger-side floorboard of the truck and contained "like citronella oil or something." T. 156-159, 241. Carter testified that upon arrival at C.C.'s residence, he lit the incendiary device, threw it into the bed of C.C.'s truck and fled the scene. T. 159. Carter additionally testified he did not want to carry out the crimes, and had failed to do so on one prior occasion. Carter testified Anderson struck him when he voiced his reluctance and threatened him with further bodily harm if he failed to complete the task. T. 159-160.

{¶ 19} C.C. testified her truck was parked in her driveway on March 14, 2024, when someone entered her property and set the truck on fire. T.134. She further testified the

fire destroyed the truck which was valued at $15,000, and caused damage to her home and driveway totaling $19,000. T. 138-139.

{¶ 20} The West Licking Fire District Fire Marshal testified samples taken from the bed of the truck and sent to the State Fire Marshal Crime Lab were positive for a medium petroleum distillate. He testified the incident was deemed an arson. T. 185, 188. The scientist that conducted the sample testing testified medium petroleum distillates include paint thinners, lamp oils, and mineral spirits, but not citronella oil. T. 192.

{¶ 21} Based on the testimony of these witnesses, the State produced sufficient evidence to prove each element of the charged offenses.

Anderson's Arguments

{¶ 22} Anderson's manifest weight arguments first attack Carter's credibility. We note, however, that credibility determinations are a matter within the purview of the jury. *State v. DeHass*, 10 Ohio St.2d 230 (1967). This Court will not reverse a jury verdict where there is substantial evidence from which a jury could reasonably conclude that the state has proven each element of the offense charged beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169 (1978).

{¶ 23} Here, the State produced evidence that corroborated Carter's testimony, thereby adding credibility to the same. Phone records obtained by investigators on the case produced text messages between Anderson and Carter, including texts exchanged on the morning of the crimes. Those messages included Anderson giving Carter C.L.'s address, a description of her truck, a directive to "melt that bitch," and a threat indicating "I'm going to be really fucking mad if it doesn't get done tonight." T. 241-243.

{¶ 24} Next, Anderson makes an unclear argument related to the phone he texted Carter from the night in question. At trial Anderson took the stand in his own defense and did not dispute the phone number belonged to a second phone he owned at the time. He claimed, however, that the phone was in the truck with Carter that evening, not with him, and he did not know how the messages about the fire between himself and Carter occured. T. 374-375. He also claimed he was in West Virginia on the night of the fire, not at home as Carter had claimed. 374-375. Yet the jury had already heard that cell phone data tied to the number Anderson was texting from placed Anderson at home that night, his girlfriend testified he was home that night, and that he had never told investigating officers that he was in West Virginia that night. T. 229, 325, 334-335.

{¶ 25} Finally, Anderson additionally complains citronella is not a medium petroleum distillate. But Carter did not testify that it was. Rather, his testimony indicates he was unsure of what was in the incendiary device. T. 159. Further, what was in the device has no bearing on the elements of the offenses nor the believability of the State's evidence as there was no dispute a fire had been intentionally set at the home of C.L.

{¶ 26} Upon review of the record, we find Anderson's complaints are without merit. We find Anderson's convictions are supported by sufficient evidence and further find the jury did not lose its way in making its credibility determinations, weighing the evidence, and convicting Anderson as charged. Accordingly, Anderson's assignment of error is overruled.

{¶ 27} For the reasons stated in our accompanying Opinion, the judgment of the Licking County Court of Common Pleas is affirmed.

{¶ 28} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Popham, J. concur.